## ABRAHAM *v.* CHENOWETH.

### SHERIFF'S SALE—PURCHASER—REDEMPTION.

J. S. and A. S., his wife, mortgage the land of A. S.    A. S. dies; the mortgage is foreclosed, and the land purchased by D.    A part of the heirs of A. S. demise to C.    C. pays D. the whole sum and redeems and goes into possession.    The grantee of J. S. brings ejectment to recover possession of the life estate of J. S.:    *Held*, that he could not recover against C.'s possessory right accompanying the execution title acquired from D.

APPEAL from Douglas.    The facts are sufficiently stated in the opinion.

*W. W. Thayer and Hermann & Ball*, for appellant.

We admit that where the judgment debtor redeems, it restores the estate, for the statute says it shall, and we do not doubt but that a redemption by the owner of an estate would have the same effect.    For instance, A. owns an estate which has been sold upon execution; this deprives him of the possession, but does not divest his legal title until the execution of the sheriff's deed.    Now, by redeeming, he removes the claim and his estate is necessarily freed from it, is restored to him.    In the latter case, the result indicated would not follow

unless the party redeeming was the owner of the entire estate. If he were the owner of a particular or reversionary interest, or of a distinct and separate moiety or portion, his redemption would not have the same effect, for he could not redeem beyond his particular interest. (Freeman on Executions, sec. 321; *Quinn* v. *Renney*, 47 Cal., 147.)

In this case, the redemption was not by the judgment debtor, but by an owner of the reversionary interest in the premises. Starr was the debtor, though Mrs. Starr had charged her estate with the debt. Two estates arose from the circumstance of her death, to wit: a life estate in Starr, and a reversionary interest in her heirs. Their redemption, or that of their grantee, relieved their interest from the sale under the foreclosure proceedings, and left Starr's interest and possession still out of him. Although they were compelled to pay the whole amount of the bid, yet that did not restore Starr's life estate or right to possession. The appellant was not paying Starr's debt; but, having an interest in the premises, he was entitled to redeem. (*Hustin* v. *Seely*, 27 Iowa, 183; *Gibson* v. *Crehone*, 5 Pick., 152; *Abadie* v. *Lobero*, 36 Cal., 397; Story's Eq. Jur., sec. 1,023; Washburn on Real Property, page 116.)

*Wm. R. Willis*, for respondent.

The appellant purchased the interest of part of the heirs of Adeline Starr. This is all the interest or estate he ever had or has now in the premises in dispute. He redeemed them from the sheriff's sale by virtue of his interest as successor in interest to the judgment debtors. This was a redemption of the whole of the premises sold, and terminated the effect of the sale. (Code, page 171, sec. 310; *Rich* v. *Palmer*, 6 Or., 339.)

Redemption is a creature of the statute, and that must be followed. (Burroughs on Taxation, 358; Rooer on Judicial Sales, sec. 906.)

If the money be paid by a stranger, and accepted by the

purchaser, the redemption is good, and enures to the purchaser. (*Phyfe* v. *Riley*, 15 Wend., 248; *Coxe* v. *Sartwell*, 21 Penn., 480; *Levick* v. *Brotherline*, 74 Penn., 149.)

The appellant can acquire by his deed no greater interest in the premises than the grantor; and this estate will not be enlarged by the sheriff's sale and redemption. (*Rich* v. *Palmer*, above cited.)

Then the title to these premises has in no respect been changed by the mortgage, foreclosure, sale and redemption, and the respondent, as grantor of J. W. Starr, has an estate therein for his life, and is entitled to the possession.

By the Court, WALDO, J.:

This is an action of ejectment for three hundred and twenty acres of land in Douglas county, the donation land claim of Adeline Williamson, afterwards Adeline Starr.

In 1875, said Adeline died, leaving her husband, J. W. Starr, and several children surviving her. In 1879, a mortgage on said land, given by said Adeline and her said husband in 1874, was foreclosed, and the land purchased by Douglas county.

The appellant claims title as grantee of the estate of a portion of the children and heirs of the said Adeline, and by redemption from Douglas county. The respondent is the grantee of the life estate of J. W. Starr, by the curtesy, in said land, and claims that the redemption terminated the effect of the sale, and restored Starr to his estate.

The position of the respondent is, that the appellant, the owner of a reversionary interest, had no power to acquire any estate or interest in the land by redemption; that his right to redeem was simply a power to remove an incumbrance—to terminate the effect of the sale in order to protect his own interest.

The rule in equity was, that when several were interested in an equity of redemption, and one only was willing to redeem, he had to pay the whole mortgage debt, and the

others interested, who refused to redeem, could not be compelled to contribute; for, it was said, it would be unreasonable to compel a party to redeem, when, perhaps, it might be for his benefit to suffer the mortgage to be foreclosed. The party so redeeming was entitled to hold the whole estate until he should be reimbursed what he had been compelled to pay beyond his due proportion. He was considered as assignee of the mortgagee, and stood, after such redemption, in the place of the mortgagee. (*Gibson* v. *Crehore*, 5 Pick., 145; *Martin* v. *Friendly*, 21 Minn., 13; *Street* v. *Beal*, 16 Iowa, 68; Id., 369; *Anson* v. *Anson*, 20 Id., 58.)

Thus redemption had the effect in equity to transfer to the redemptioner the estate of the mortgagee. It was treated as an assignment, by operation of law, of the title of the mortgagee to the redemptioner. (*Fletcher* v. *Chase*, 16 N. H., 42; *Ellsworth* v. *Lockwood*, 42 N. Y., 97.)

Redemption, then, did not strictly discharge a lien—it had the effect to defeat or transfer an estate. In this state, after a decree of foreclosure of a mortgage, the property is sold on execution, subject to redemption in like manner and with like effect as property is sold on an execution issued on a judgment. But property sold on an execution issued on a judgment is subject to redemption with like effect as property was subject to redemption under a decree of foreclosure in a court of equity.

Redemption, in the sense of the statute, was a word unknown to the common law; was borrowed from the equity courts, and in its new station will retain its original meaning, unless some new sense is expressly or impliedly added to it. There can be no reason why this should be so; for the title of a purchaser at an execution sale, before the time for redemption has expired, is like that of a mortgagee in equity, after a decree of foreclosure, and before the expiration of the time allowed for redemption under the decree.

Mr. Justice Sawyer shows this in *Page* v. *Rogers*, 31 Cal., 310. In that case, speaking of the title acquired by a pur-

chaser at a sale on execution, he says:  " To call the interest of the purchaser at a sale on execution, before the making of a sheriff's deed, a lien merely, is not very exact.    In a general sense it may be a lien, but it is more.    The purchaser obtains an inchoate right, which may be perfected into a perfect title, without any further act than the execution of a deed in pursuance of a sale already made.    It is not a mere right to have a certain sum, charged upon the property, satisfied out of it. The sum before charged upon the land has already been satisfied by the sale, to the amount of the sum bid and paid by the purchaser.    The purchaser has already bought the land and paid for it.    The sale is simply a conditional one, which may be defeated by the payment of a certain sum within a certain limited time.    If not paid within that time, the right to a conveyance becomes absolute, without any further sale or other act, to be performed by anybody.    The purchaser acquires an equitable estate in the lands, conditional, it is true, but which may become absolute by simple lapse of time, without the performance of the only condition which can defeat the purchase.    The legal title remains in the judgment debtor, with the further right in him, and his creditors having subseqent liens, to defeat the operation of a sale already made, during a period of six months, after which the equitable estate acquired by the purchaser becomes absolute and indefeasible, and the mere dry, naked legal title remains in the judgment debtor, with the authority in the sheriff to divest it by executing a deed to the purchaser."

It is here shown that a sale, without the right of possession given by our statute, creates an equitable estate in lands in the purchaser.  This estate must continue to exist until determined in some manner known to the law.  The only mode by which this can be effected is by merger in the legal title.  (*Atkins* v. *Augert*, 46 Mo., 518.)

In this case, had the sale taken place in the life-time of Adeline Starr, and she had redeemed the execution title, uniting with the legal title, in the same person, would have

merged.   The effect of the sale would thus have been termin-
ated.   She would have been restored to her  estate,  of which
she was divested by the sale, the same as though the sale had
never taken place, and this without any aid from  the  statute.
Therefore, when the statute says that a redemption by the
judgment debtor shall have the effect  to  terminate  the sale,
and restore him to his estate, it declares  precisely  what  the
common law, had the statute been silent, would  have  accom-
plished by the operation of the principle of merger.

But Adeline Starr dies, and it is only the reversion in fee,
after the determination of the life estate of Starr, that descends
to her heirs.   Hence when they or their grantee redeem,  the
intermediate life estate  of  Starr  prevents  the merger of the
execution title in the legal title in fee, in reversion cast upon
the heirs.   The execution  title in such case  is not  destroyed
by merger.   It is not destroyed by operation of the statute,
for the statute expressly confines its operation to the redemp-
tion by  the  judgment debtor,  when it says the effect of the
sale shall be terminated by the redemption.   If the successor
in interest had succeeded to the legal title in the entire estate
sold, the two estates, on uniting in him, would have merged.
But where the owner of a reversion in fee expectant upon the
determination of a life estate  redeems, this result cannot
follow.

But unless Starr's title, acquired  by  the  purchaser  at the
sale, reinvests in Starr, he cannot recover; for he lost the
right of possession by the sale.   This title and this possessor's
right passed to the purchaser, and must remain with his  title
wherever found until the effect of the sale is terminated.

Starr has not redeemed from  the  sale.   But to avoid the
difficulty that arises here, the respondent claims that as to
the interest of Starr, the appellant was a mere  stranger; that
his right to acquire anything by the redemption was confined
to his own interest; that to effect a redemption of his own in-
terest, he was compelled *in invitum* to redeem the whole
premises, but had no right or power to acquire or hold Starr's

interest, and that the redemption, so far as the interest was concerned, inured to Starr's benefit.

The interest of Starr had been foreclosed and sold, and the entire defeasible title was in the purchaser, subject to Starr's right to redeem. Any transaction between the purchaser and the appellant as to this title, so far as Starr is concerned, would seem to be *res inter alias acta.* (*Merritt* v. *Jackson,* 1 Wend., 46; *Abadie* v. *Lobero*, 36 Cal., 396.)

In *Abadie* v. *Lobero*, Abadie, a stranger, supposing he had a right to redeem, when in fact he had none, redeemed from the sale. The court considered that while the transaction was not a redemption, yet, having been acquiesced in by the purchaser, it could be treated as a purchase, and assignment of the purchaser's title to Abadie.

The case of *Rich* v. *Palmer,* 6 Or., 239, was a sale for taxes, and a redemption by an equitable owner of part of the land. The sheriff, notwithstanding such redemption, made a deed to the purchaser, and the equitable owner brought suit to cancel this deed as a cloud upon his title. The defendant demurred to the complaint, alleging, as one ground of demurrer, that the plaintiff should have described what portion of the premises he owned. But the court held that this was not necessary, since the premises had been sold as a whole. The effect of the redemption, as between other parties, was not a question in the case. The fact of redemption was all that concerned the purchaser, and was all that was decided by the court. But the court said, and this is what is cited by counsel, that "the plaintiff became restored to the interest which he had before the sale, and his estate was not enlarged by the redemption, unless it might be to give him a claim for contribution against the owner of that portion of the premises not owned by the plaintiff."

It would seem to be the true view that a sale of land for taxes does not of itself divest the owner of any interest in the lands. The purchaser acquires rather a lien on, than an estate

in, the land by his purchase. (*People* v. *Hammond*, 1 Doug., [Mich.] 276, 180; *Lake* v. *Gray*, 35 Iowa, 44.)

Section 88, chapter 57, general laws, page 767—that a tax sale "conveys to the purchaser all the estate or interest of the owner, whether known or unknown," relates to the character of the ultimate title acquired by the purchaser—whether an independent fee simple title to the land itself, or but the estate of some particular person in the land. (See Blackwell on Tax Titles, chapter 38.)

It has been determined by this court that the purchaser does not acquire the legal title by the act of purchase. (*Dolph* v. *Barney*, 5 Or., 213.) He must acquire it, then, by the deed, and the title referred to in the above-mentioned section must relate to the character of this title, whether absolute or derivative.

In *Oneale* v. *Cardwell*, 3 Cr. C. C., 316, the court say that during the period allowed for redemption, the purchaser has neither the legal or equitable title. In *Brackett* v. *Gilmore*, 16 Minn., 245, the court say the only equity he can have during this period is "an equity contingent on non-redemption, to demand and receive a deed of conveyance, which becomes vested after the time of redemption has expired, while as against the owner, it seems an abuse of words to say that he can have any equity, or equitable rights."

In *Altes* v. *Hinckler*, 36 Ill., 265, where the sheriff had neglected to affix a seal to the tax deed, a bill filed to correct the mistake was dismissed, the court saying that a purchaser at such a sale has no standing in a court of equity. "A tax title, if a title at all, is so *stricti juris*. It is a purely technical, as contradistinguished from a meritorious title, and depends for its validity upon a strict compliance with the statute."

Before sale, the state has a lien on the land for the tax. After sale, this lien is transferred to the purchaser. The tax is not discharged by the sale. (*Williams* v. *Townsend*, 31 N. Y., 411.) The liability of the owner continues in favor

of the purchaser.    When the purchaser is paid the amount of his lien the tax is discharged, and as a consequence the lien destroyed.

Hence, in considering this question, redemption, so-called under tax sales, seems inapplicable, and ought to be laid out of view.    The word redemption, in such cases, seems to mean merely the payment of a sum of money having the effect to discharge a lien, while redemption under an execution sale involves the transfer and acquisition of an estate.

Now, if the redemption transferred to the appellant the estate acquired by Douglas county at the sale, then the right to the possession which belonged to that estate, must pass with it, and defeat at law the respondent's action.

This is manifestly the effect of the redemption by force of the sense inherent in the term.    Starr has done nothing, and nothing has been done for him, which reinvested in him the estate and right of possession transferred out of him by the sale.    The appellant has done that which vests him with the execution title, with its accompanying right of possession, and he must hold this title against respondent unless merged. As we have seen, this cannot take place, and the appellant is consequently entitled to the possession of the land.

Judgment reversed.