## STAUB v. TRIPP.

1. COVENANTS—BREACH—DESCRIPTION BY LOT NUMBERS CONTROLLING.

In action for damages for breach of covenant of title, where deed specifically described lots conveyed by number as platted, which included land between meander line and water's edge belonging to State, said description is controlling rather than description that land was bounded by lake.

2. SAME—RIPARIAN RIGHTS IN LAND CONVEYED DOES NOT SATISFY COVENANTS IN DEED—MINIMIZES DAMAGES.

That purchaser possesses rights of riparian owner in land between meander line and water's edge merely minimizes damages because it gives him right of access to water, but does not satisfy covenants in deed, since he can neither incumber nor sell it, and therefore damage for breach of covenant was properly awarded.

3. SAME—ACTION MAY BE MAINTAINED PRIOR TO EVICTION.

Purchaser failing to secure title to part of land conveyed on which part of large building stood because title was in State, and having been prevented by State from platting land, may maintain action for breach of covenant prior to his eviction, since, as against State, he may not acquire title by adverse possession.

Error to Van Buren; Warner (Glenn E.), J. Submitted June 18, 1929. (Docket No. 110, Calendar No. 34,381.) Decided September 4, 1929. Rehearing denied December 3, 1929.

Assumpsit by Casper Staub, Jr., against Burrell Tripp and another for breach of covenant of title. From a judgment for plaintiff, defendants bring error. Affirmed.

*W. G. Bessey* (*A. M. Cummins,* of counsel), for plaintiff.

*I. C. Montague,* for defendants.

NORTH, C. J. Plaintiff brought this suit to recover damages for breach of covenant of title. In May, 1922, Mr. and Mrs. Tripp gave plaintiff a warranty deed of certain property located on the easterly shore of Lake Michigan in the city of South Haven. A pavilion known as the Big Casino was supposed to be located on the land conveyed. The deed contained the usual covenants, and the consideration was $40,000. The land was described as follows:

"Lots one to six inclusive, lots 25 to 30 inclusive and the north half of lots 7 and 24, in Block twelve of Dyckman & Woodman's Addition to the Village (now city) of South Haven, intending to cover the parcel of land bounded on the north by Woodman street, on the east by North Shore Drive, on the south by Avery street, and on the west by Lake Michigan."

Some time after he received his deed, plaintiff attempted to plat the land, including that lying between the meander line and the water of the lake. His proposed plat was rejected by the auditor general on the ground that the State owned the land west of the meander line and extending to the water's edge. A survey disclosed that lots 24 to 30, inclusive, as already platted extended in a westerly direction beyond the meander line, which at this point is upwards of 200 feet back from the water. The casino building is more than 260 feet long and more than 100 feet wide. As located it extends more than 65 feet west of the lot lines onto unplatted land. Three of the lots included in the building site as platted extend about 50 feet west of the meander line. In other words, the building extends substan-

tially 135 feet west of the meander line. In addition to declaring upon the breach of covenant, the declaration also contains a count charging misrepresentation as to the building being located on the land conveyed, and recovery of damages is sought in consequence thereof. The case was tried before the court without a jury, defendants' title found to be defective as to the land lying west of the meander line, and damages in the sum of $6,000 awarded to plaintiff. Defendants review by writ of error.

In behalf of appellants it is urged that the deed expressly bounds the land on the west "by Lake Michigan," and that "the line of Lake Michigan is the meander line;" therefore there is no breach of covenant as to the land actually conveyed. The claim is made that this description by metes and bounds is more definite than that by lot numbers and therefore must control. This position is not tenable in this case. Defendants' deed specifically described and purported to convey lots which as platted included land west of the meander line and to which defendants had no title. So far as disclosed by the record, none of the parties were aware of this at the time the deed was given. There can be no doubt that both the grantors and the grantee consummated this transaction believing the defendants held title and could convey the land upon which the Big Casino stood. Such proved not to be the fact; and the deed cannot now be construed as one not including this land. By its express terms the deed transferred to plaintiff "the Big Casino, together with all furnishings and equipment therein contained," and as between these parties, the plaintiff is the owner thereof; but he did not secure from defendants title to the land upon which a large portion of the building stands. That plaintiff possesses the rights of a

riparian owner in the land west of the meander line merely minimizes the damages. It gives him a right of access to the water (*Kavanaugh* v. *Baird*, 241 Mich. 240), but it does not satisfy the covenants in defendants' deed. This deed did not convey to plaintiff title to that portion of the described lands which lies west of the meander line. He can neither incumber nor sell this land. Likewise he cannot with safety improve it or place structures of any kind thereon. This land borders on the shores of one of the Great Lakes, and title to the land lying beyond the meander line is vested in the State. *Kavanaugh* v. *Baird, supra.* The trial judge correctly found a breach of the covenant of title, and his assessment of damages in consequence thereof is sustained by the record.

The defendants further assert that plaintiff had not been evicted before this suit was brought, and therefore he is not entitled to relief. The rule of law that a grantee cannot maintain a suit for breach of title to land prior to his eviction cannot be invoked in this case because the title to the fee is held by the State, and as against the State the plaintiff cannot acquire title by adverse possession.

"In the absence of legislation providing otherwise, the statute of limitations does not run against the government; and, therefore, title to public lands cannot be acquired by adverse possession either as against the United States, or any of the several States." 1 R. C. L. p. 734, citing *Crane* v. *Reeder*, 21 Mich. 24 (4 Am. Rep. 430), and many other cases.

Already the State has prevented the plaintiff from platting the land. His action was not prematurely brought. See Thompson on Real Property, § 3543.

Consideration has been given to defendants' other assignments of error, but we think they are not well founded. The judgment of the lower court is af-. firmed, with costs to the appellee.

FEAD, WIEST, CLARK, MCDONALD, POTTER, and SHARPE, JJ., concurred. The late Justice FELLOWS took no part in this decision.